UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-61699 JEM

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

PROFILE SOLUTIONS, INC.,
DAN ORAN, and
LEONARD M. TUCKER,

    Defendants.
_____/

**DEFENDANT LEONARD M. TUCKER'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant Leonard M. Tucker ("Tucker"), through his attorneys Mark C. Perry, Esq., and Dickinson Wright PLLC, and pursuant to Fed.R.Civ.P. 56 and D.S.Fla. L.R. 56.1, submits this Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment, and states as follows:

**Role and Responsibilities as a Consultant and Shareholder of Profile Solutions, Inc.**

    1.    Leonard M. Tucker ("Tucker") is an independent business consultant residing in the State of Florida who has provides business consulting services through his limited liability company. Such consulting services include: advising on public filings, potential acquisitions, general business functions, growth, expanding customer base, and other related services. **[Exhibit C: Tucker Testimony: pp. 18-19].**

    2.    Tucker met Dan Oran ("Oran") in 2017 through a former employer, Elizabeth Karwowski, who was a partner of Oran. **[Ex. C: p. 32-33].**

    3.    Tucker was subsequently retained by Oran as a consultant to advise on, among other things, matters related to the requirements and responsibilities of a public company. **[Ex. C: p. 42, ¶ 20; Exhibit A: Oran Testimony: p. 58, ¶ 2].**

1

4. Tucker informed Oran that, in 1993, he had pled guilty to one count of racketeering under the federal RICO statute, and served 14 months in prison followed by three years on probation, and completed satisfactorily his entire sentence in February 1998. Oran informed Tucker that he was already aware of his situation. **[Ex. C: p. 40, ¶ 12-19].**

5. Tucker entered into an initial consulting agreement with Oran to provide business consultant services to Oran's company, Elite Products International, on November 1, 2017, and a superseding consulting agreement with Profile Solutions, Inc. ("Profile") on January 1, 2019, which clearly stated that his relationship with Profile was "that of an independent contractor and not that of an employee". **[Ex. 2: p. 47-48; Exhibit 24, p. 2]**[1].

6. In addition to consulting services provided to Profile, Tucker also provided consulting services for Oran to Blackpoll Fleet International, Inc. and Beta Music Group, Inc. **[Exhibit 39, p.2].**

7. Among other consulting services, Tucker assisted in drafting press releases for Profile – typically preparing the initial drafts. All drafts of press releases were sent to Oran, attorneys and others for review. Tucker would send all drafts to everyone involved for comments, edits and suggested changes to make sure all drafts were truthful and accurate. Once the drafts were approved by everyone, final approval came from Oran before they were submitted to wire services. **[Ex. C: p. 147-148; Ex. G: p. 2, ¶ 14].**

8. Tucker did not have an office or a desk at Profile's office. When he was in the office, he would work at a desk next to Oran. **[Ex. C: p. 69, ¶ 18].**

9. Tucker did not hold himself out as an officer, director or decision-maker of Profile, and in fact, had to get Oran's approval for all work that he performed for Profile. **[Ex. H: Declaration of Robbie Hicks, p. 1, ¶ 5-6].**

10. Tucker was a consultant – not an officer or director. "[Oran] didn't hire him as a director and [he] didn't hire him as an officer. He was a consulting [*sic*]." **[Ex. A: p. 62, ¶ 3].** After seeking Tucker's opinion on company issues, Oran would "send everything to the lawyer to make an opinion on it to make sure that it's correct." **[Ex. A: p. 76, ¶ 3-10].**

11. Oran testified, "[Oran was] the only officer and director" **[Ex. A: p. 67, ¶ 1]**. "[Tucker] has never been my business partner. He was my consultant." **[Ex. B: p. 429, ¶ 14-15].**

---

[1] The numbered exhibits referenced herein correspond to the numbered exhibits as introduced by the Commission in the interview of the witness.

2

12. Tucker did not have legal authority at any time to make decisions for Profile on matters of corporate policy. **[Ex. H: p. 2, ¶ 16; Ex. G: Declaration of Jonathan Rabinowitz, p. 2, ¶ 10, 15, 17].**

13. Tucker had no independent decision-making authority on behalf of Profile. In fact, the record demonstrates that all decisions were made by Oran. For example, Oran approved all press releases [**Ex. B: p. 259, ¶ 1-10; Ex. G: p. 2, ¶ 14**]. Oran approved all registration statements [**Ex. A: pp. 109-110**]. Oran approved what and who to feature on Profile's website [**Ex. A: p. 54, ¶ 5-21; Ex. A: p. 77, ¶ 1-11**] Oran made the decision to pursue the deal in Eswatini [**Ex. A: p. 156-157**] and negotiated directly with the Princes and Ministers of the Kingdom and otherwise made all strategic decisions on behalf of Profile **[Ex. A: p. 169-170]**.

**Facts Regarding Alleged Misrepresentations in Press Release, Social Media Posts and Registration Statements.**

14. Tucker set up an account on Twitter for Profile (the "Profile Twitter Account"), which was used by other individuals working for the Company, including Adam Baker ("Baker"), who posted to the account. Baker was an investor relations consultant hired by Oran who was responsible for social media and media communications to raise awareness about Profile. **[Ex. H: Declaration of Robbie Hicks, p. 1, ¶ 9].**

15. Oran – not Tucker – decided how and when press releases were warranted. **[Ex. C: p. 150, ¶ 8-14].**

16. On October 18, 2018, Profile issued a press release regarding the company receiving preliminary approval from the Kingdom of Eswatini to grow cannabis in the kingdom. Tucker drafted the initial draft, based on information provided by Oran. The release stated that "[Profile] believe[s] this opportunity could generate $20-$30 million in annual revenue."

17. These projections came from a proposal prepared for Profile by Moav Gafni, owner of the largest grower of flower in Israel (the "Gafni Projections"). **[Ex. C: pp. 151-154; Ex. 41; Ex. L: Gafni Projections Ex. M: Moav Gafni Email, October 4. 2018].**

18. Daniel Rozner ("Rozner"), an Israeli acquaintance of Oran prepared a detailed presentation on behalf of Profile for the establishment of a growing farm and processing plant, which further sets out the basis of its projected revenue, and an executive presentation which further details Profile's financial forecast (the "Rozner Proposal"). **[Ex. 74; Ex. N: Rozner Proposal]**.

19. Profile further relied on reports prepared by the Sadé Group in September 2018 (the

3

"Sadé Report") **[Ex. O: Sadé Report]** and Stem Ventures, Inc. (the "Stem Report") **[Ex. P: Stem Report]**.

20. On November 13, 2018, Profile issued another press release, which again, discussed Profile's preliminary approval to establish a growing farm and processing plant in Eswatini. Additional press releases discussing the same were issued on January 16, 2019 and again on March 6, 2019. (Each of these press releases collectively, with the October 18, 2018 Press Release, hereinafter referred to as the "Press Releases"). **[Dkt. No. 5, ¶¶ 42, 45, 46]**.

21. Tucker drafted the Press Releases based upon information given to him by Oran, and had no personal knowledge regarding the status of the legality of cannabis in Eswatini at the time. **[Ex. C: p. 157, ¶ 17-25]**.

22. In January 2019, Tucker became aware of the fact that Eswatini was in the process of drafting legislation creating a regulatory scheme for cannabis in the Kingdom, and that the government was going to approve cannabis to grow and to export, and to import products and materials need to grow cannabis in Eswatini. **[Ex. C: p. 117, ¶ 2-8]**.

23. Tucker drafted the Press Releases because Oran wanted to keep Profile investors informed, and used the information that was provided to him. **[Ex. C: p. 157, ¶ 17-25]**.

24. Regarding the legality of cannabis in Eswatini, Oran stated it was "[a] hundred percent legal. Everybody use it [*sic*], but it's not in the law. I change the law [*sic*]. Now the law has been changed. I work for two years to change the law [*sic*], but I will not do business there. But I did change the law. They write the new law in my books and what I provide them [*sic*]." **[Ex. A: p. 167, ¶ 20-25]**.

25. The October 2018 Press Release, titled "PSIQ Receives Preliminary Approval from the Kingdom of Eswatini Ministry of Economic Planning and Development to Receive License as an Exclusive Growing Farm and Processing Farm for Medical Cannabis and Hemp," quoted Oran who stated that "this opportunity could generate $20 to $30 million in annual revenues." **[Ex A: pp. 190-192; Ex. 41]**.

26. The Press Releases were written by Oran and Tucker, at the direction of Oran, sent to Profile attorneys for review and approval, and were ultimately approved for release by Oran. **[Ex. A, p. 192, ¶ 19-25]**.

27. On September 3, 2018, prior to the initial October 2018 Press Release, the Minister of Economic Planning and Development drafted a letter to Oran stating "We thank you for your

interest to invest in Swaziland [now Eswatini] in this new and innovative business. On behalf of the Kingdom of Swaziland, we wish to set out in principle our intention to engage with PSIQ and approve the needed licenses for a growing farm and processing plant for Medical Cannabis & Hemp products in Swaziland." **[Exhibit D: Correspondence from Swaziland Government, September 3, 2018].**

28. Oran met with two of the princes of Eswatini, including the King's brother, several times in Eswatini as well as in Florida and Oregon regarding the establishment of an exclusive growing farm and processing plant for medical cannabis and hemp. **[Ex. C: p. 99, ¶ 1-15].**

29. Oran initiated pursuing the deal in Eswatini after receiving a call from Rozner regarding the potential to obtain cannabis licenses in the Kingdom. **[Ex. A, p. 149 ¶ 2-8].** Rozner informed Oran that the Eswatini government was "looking for a grower for cannabis to come to the country and do the growing of cannabis on behalf of Eswatini for export all over the world. **[Ex. A: p. 157, ¶ 1-4].**

30. Profile subsequently partnered with Stem Ventures, Inc. ("Stem") on the deal. Stem was very experienced in the industry, had many facilities, and were going to be the operator of the Eswatini facility. Profile executed an agreement with Stem wherein Stem advanced Profile $2,500,000 to be held in escrow with a commitment of an additional $2,500,000 to fund Profile's investment commitment under the agreement. **[Ex. 21, p. 20, ¶ 2; Ex. C: p. 99, ¶ 16-21; Ex. 42].**

31. On March 25, 2019, Stem issued a press release announcing that it executed a definitive agreement dated March 22, 2019 to acquire South African Ventures, Inc., which had a joint venture with Profile. Stem published that it had "received preliminary approval to become the only licensed growing farm and processing plant for medical cannabis and industrial hemp … in [Eswatini] for a minimum of 10 years….The eSwatini Facility has the potential to produce over 12,000 KG of product on annual basis. Stem expects production from the Facility to begin during the fourth quarter of 2019." **[Ex. J: Stem Holdings Press Release, March 25, 2019].**

32. Subsequently, on April 1, 2019, Stem filed a Form 8-K with the Commission in which Stem disclosed: "While the entity domiciled in the Kingdom of Eswatini (Swaziland) has yet to commence operations, it owns land and has been granted provisional licenses that allow for the production, harvest and export of cannabis and CBD industrial hemp." **[Ex. J: Stem Holdings Form 8-K].**

33. In January 2019, Golan Maimon ("Maimon"), a former captain in the Israeli Army, accompanied Oran and Tucker on a trip to Oregon with the two princes. According to Tucker, they

were told "you guys are definitely getting a license.  You're going to be exclusive.  You know in our country, you have to apply for it.  You're going to get it."  **[Ex. C: p. 100, ¶ 2-8]**.

34. Oran, Tucker and Maimon subsequently traveled to Eswatini, where one of the Princes, Prince Hlangusemphi, took them to a location that had an office building and told them that the location was where he wanted them to establish their corporate office and build their cannabis farms.  **[Ex. C: p. 100, ¶ 22-25; Ex. I: p. 3, ¶ 17-18]**.

35. This was Tucker's first and only trip to Eswatini.  **[Ex. I: p. 2, ¶ 12]**.

36. Oran further testified that the statement regarding "preliminary approval" was based upon verbal approval that he had personally received "right on the ground being made" by the Minister.  **[Ex. A: p. 193, ¶ 1-6]**.  He further testified that he met with all of the ministers of Eswatini, including the Prime Minister, and was given a preliminary license to do business there.  **[Ex. A: p. 170, ¶ 9-25]**.  Oran was told that it would take three or four months to get the license.  **[Ex. A: p. 155, ¶ 20-22]**.

37. Tucker was unaware of the status of the law of cannabis in Eswatini and subsequently learned of the status of the law on a trip to the Kingdom in January 2019.  During Tucker's trip to Eswatini, two of the Princes of Eswatini, including the King's brother, informed Tucker that cannabis was going to become legal, and that the Government was going to approve cannabis to grow and to export, and to import products and materials needed to grow cannabis in Eswatini.

38. In addition to reliance on the Gafni Projections, Rozner Proposal, the Stem Report and the Sadé Report, Oran further testified that the revenue projections were based on, among other things: the cost of CBD and cannabis, the market price at that time, the land that was to be acquired from Eswatini, how much they intended to grow, and the anticipated sales.  He further stated that he believes the calculations may have also come from Stem Holdings.  **[Ex. A: p. 191-193]**.

39. Oran, who in his sole authority, approved the Press Releases, further stated that, in his opinion, Profile was the leading distributor and manufacturer in the cannabinoid industry at the time he approved the statements.  He further stated that he based his opinion on sales, the company's presence in the region, feedback, and the overall structure of the company.  **[Ex. A, pp. 195-195]**.

40. Profile filed a Form S-1/A Registration Statement with the Commission on March 5, 2019 (the "Amended Statement"), which was prepared by Profile's attorney, Jackson Morris, with input from Oran, the company's auditors, Anna Berman, Robbie Hicks and Tucker, and others.  **[Ex. C: p. 99, ¶ 5-15; Ex. A: pp. 108-120]**.

41.     Oran directed, reviewed, approved and signed the Amended Statement as the Chief Executive Officer and Chief Financial Officer of Profile. **[Ex. 21].**

42.     The Amended Statement reiterated the statements made in prior Press Releases, and Tweets, including that the company received preliminary approval from the Eswatini government. **[Ex. 21, p. 18; Ex. C: p. 98, ¶ 24].**

43.     In addition to the September 3, 2018 letter from the Minister of Economic Planning and Development, which acknowledge the Kingdom's intent to "approve the needed licenses for a growing farm and processing plant," Oran traveled to Eswatini on multiple occasions and met two of the princes of Eswatini, the Attorney General and the Prime Minister, who told them that Profile was going to get an exclusive license. **[Ex. C: p. 98-100, ¶ 11-25].**

44.     Oran and Tucker were not only told that they had received preliminary approval, they were told, in fact, "you're getting the license." **[Ex. C: p. 137, ¶ 13-16].**

45.     The two Eswatini princes told Tucker and Oran that Profile would receive a license, but the government needed to first pass legislation which would legalize cannabis in the country. **[Ex. C: p. 104, ¶ 1-7].**

46.     The Eswatini parliament commissioned the Attorney General to draft the legislation for legalizing cannabis in the country, which he did. **[Ex. C: p. 121, ¶ 3-6; Ex. F, p. 2, ¶ 13].** Oran provided Eswatini with cannabis laws from the states of Colorado and Oregon and assisted them in drafting the legislation. **[Ex. A: p. 168, ¶ 1-5; Ex. Q: Eswatini Cannabis Regulations].**

47.     On, December 4, 2018. Profile issued another press release announcing that it had granted exclusive distribution rights to sell its cannabis products in Mexico and Argentina to RCS International Investments, Corp., a Florida corporation ("RCS") "with a first year minimum guarantee of $500,000 and 20% growth per year thereafter." **[Ex. 78;  Ex. C: p. 160-161].**

48.     On March 21, 2019, Profile issued another press release, which stated that it "had now granted that company (RCS) exclusive distribution rights to sell Profile's products in Paraguay, Chile and Brazil "with a first year minimum guarantee of $500,000 and 20% growth per year thereafter." The March 21, 2019 Press Release also quoted Oran who stated that Profile granted the additional distributions rights "[b]ased upon the success and commitment being made in Mexico and Argentina by RCS" and that the Company expects the relationship with RCS to "continue to flourish to increasing revenues." **[Dkt. No. 5, ¶ 63].**

49.     RCS is a distributor of CBD in Argentina and Mexico.  Oran testified that RCS is the

exclusive distributor of CBD for South America, including Argentina, and Mexico. **[Ex. A, p. 231, ¶ 5-6].**

50. On June 19, 2017, then-Mexican President Enrique Peña Nieto signed a bill into law that officially legalized cultivation, production, and use of medical cannabis products with less than 1% THC in Mexico. An analysis by Keith Speights, published by the Motley Fool, projected that sales of legal marijuana in Mexico would reach $99 million by 2022. **[Ex. 78, p. 1, ¶ 2].**

51. Oran testified that Profile only gave RCS, a Florida corporation, the rights to sell in Paraguay, Chile, Brazil, Argentina and Mexico. Profile had no responsibilities concerning how RCS sold and distributed products in these countries, nor did Profile have any responsibility to independently verify the status of RCS' business licenses in those countries. Profile granted RCS the exclusive distribution rights for those countries – nothing more **[Ex. B: p. 311-313].**

52. Profile's success in the deal with RCS would be when the products were sold to RCS in Florida – not when or how RCS distributed the products in other countries. **[Ex. B: p. 342, ¶ 7-11].**

53. Oran testified that the statements in the December 2018 Press Release were based upon representations by Rafael Salvia, owner of RCS. **[Ex. B: p. 306 ¶ 14-23].**

                                                     Respectfully Submitted,

By: /s/ *Frank Borger Gilligan, Esq.*

Frank Borger Gilligan, Esq. (*Pro Hac Vice*)
Jacob Frenkel, Esq. (*Pro Hac Vice*)
Dickinson Wright, PLLC
1825 I Street, N.W., Suite 900
Washington, DC 20006
Tel.: (202) 466-5953
Emails: fborgergilligan@dickinsonwright.com
            jfrenkel@dickinsonwright.com

Mark C. Perry, Esq.
Fla. Bar No. 251941
Law Office of Mark C. Perry, P.A.
6245 North Federal Highway, Suite 321
Ft. Lauderdale, FL 33308
Tel.: (954) 351-2601
Emails: mark@markperrylaw.com
           maureen@markperrylaw.com

*Attorneys for Defendant Leonard M. Tucker.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 14, 2023, a copy of the foregoing has been delivered by email to counsel for all parties by operation of the Court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Frank Borger Gilligan, Esq.*
Frank Borger Gilligan, Esq.